## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NATALIE RAGLAND,

        Plaintiff,

v.                                  Case No:   6:22-cv-995-WWB-LHP

IEC US HOLDINGS, INC., D/B/A
FLORIDA CAREER COLLEGE

        Defendant

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:   DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE (Doc. No. 12)**
>
> **FILED:   September 6, 2022**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.   INTRODUCTION

On June 4, 2022, Plaintiff Natalie Ragland filed a Complaint against her former employer, Defendant IEC US Holdings, Inc., alleging age-based hostile work

environment discrimination and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.*   Doc. No. 1.

On September 6, 2022, Defendant filed the above-styled motion to compel arbitration and to stay the case pending completion of arbitration, arguing that Plaintiff's claims fall within a mandatory and mutual arbitration agreement which Plaintiff entered into.   Doc. No. 12.   In support of the motion, Defendant attaches the Declaration of Sherri McKaig, Senior Director of Human Resources for IEC Corporation, Defendant's parent company (Doc. No. 12-1); the Declaration of Barbara Perez, Senior Compliance Officer at Florida Career College in Orlando, Florida (Doc. No. 12-2); a copy of the March 4, 2019 Alternative Dispute Resolution Program Arbitration Agreement at issue in this case (Doc. No. 12-3); a copy of Plaintiff's online job application, electronically signed by Plaintiff on August 16, 2018 and August 27, 2018 (Doc. No. 12-4); a February 27, 2019 letter from IEC Corporation to Plaintiff offering the position of Student Finance Advisor with Florida Career College, Orlando Campus (Doc. No. 12-5); and the Declaration of David M. DeMaio, counsel for Defendant in this action (Doc. No. 12-6).

Plaintiff filed a timely response in opposition, arguing that: (1) she rejected Defendant's arbitration agreement in writing; (2) the sole means of accepting the Agreement was by affixing her signature, which she asserts she never did; (3)

Plaintiff's employment application did not create a valid and enforceable arbitration agreement; (4) Plaintiff's 2018 online application and the 2019 offer letter are not binding contracts; and (5) the 2018 online application was for a different position than the one for which Plaintiff received an offer of employment in 2019, therefore to the extent the 2018 online application created a binding arbitration agreement, such an agreement had expired and was no longer valid by 2019. Doc. No. 16. With her response, Plaintiff attaches her own Declaration (Doc. No. 16-1, at 1-6); a copy of her online application with her electronic signatures dated August 16, 2018 and August 27, 2018 (*Id.*, at 7-11); and a print out from Defendant's online Job Applicant Portal for the Student Finance Advisor Position (*Id.*, at 12-14).

The motion and response are ripe for consideration and have been referred to the undersigned. For the reasons discussed below, the undersigned will respectfully recommend that Defendant's motion (Doc. No. 12) be denied.

## II.   APPLICABLE LAW

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), establishes a "federal policy favoring arbitration" and requires that courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citations omitted). Under the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.

In determining whether a dispute is subject to arbitration, courts must consider three issues: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived."   *Fla. Farm Bureau Ins. Cos. v. Pulte Home Corp.*, No. 8:04-cv-2357-T-EAJ, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005).   Here, the parties dispute only the first requirement—whether a valid written agreement to arbitrate exists.   *See* Doc. No. 12, at 12-23; Doc. No. 16, at 8-13.

"[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so."   *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).   Generally, whether the parties have entered into an arbitration agreement is a question for resolution by the Court, not by the arbitrator.   *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299–300 (2010); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008).   "In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts while at the same time, taking into consideration the federal policy favoring arbitration."   *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, No. 3:19-cv-334-J-34MCR, 2019 WL 7666549, at *7 (M.D. Fla. Dec. 6, 2019) (quoting *Corbin v. Affiliated Computer Servs.*, No. 6:13-cv-180-Orl-36TBS,

2013 WL 3804862, at *3 (M.D. Fla. July 19, 2013)).  "To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove 'offer, acceptance, consideration and sufficient specification of essential terms.'" *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, *6 (M.D. Fla. Apr. 21, 2009) (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).  "The proponent of the contract must prove these elements by a preponderance of the evidence."  *Id.* (citing *St. Joe Corp.*, 875 So. 2d at 381; *Robbie v. City of Miami, Fla.*, 469 So. 2d 1384, 1385 (Fla. 1985)).[1]  Thus, under Florida law, "[t]he party seeking enforcement of an [arbitration] agreement has the burden of establishing that an enforceable agreement exists."  *Sinclair v. Wireless Advocs., LLC*, No. 20-CV-60886-RAR, 2021 WL 865458, at *7 (S.D. Fla. Mar. 1, 2021) (citing *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st Dist. Ct. App. 2019)).

Pursuant to the FAA,

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such

---

[1]  Although the Agreement states that it is to be interpreted according to the Federal Arbitration Act (Doc. No. 12-3, at 3), both parties cite to Florida law and therefore appear to agree that Florida contract law applies to their dispute.  Doc. No. 12, at 15-23; Doc. No. 16, at 11-12.

demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure. . . .

9 U.S.C. § 4.

The Eleventh Circuit has held that, in general, "a summary judgment-like standard" applies to motions to compel arbitration, in that a district court may conclude as a matter of law that the parties did or did not enter into an arbitration agreement only if "'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). Under this standard, the Court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Silvers v. Verbata, Inc.*, No. 5:17-cv-169-Oc-34PRL, 2018 WL 1863777, at *1 n.2 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, 2018 WL 1992204 (M.D. Fla. Apr. 27, 2018) (citing *Bazemore*, 827 F.3d at 1333). However, "[c]onclusory allegations that are void of specific, supporting facts lack probative value for a party opposing summary judgment." *Dandridge v. Sherwin Williams, Inc.*, No. 8:21-cv-400-KKM-TGW, 2021 WL 2228394, at *1 (M.D. Fla. May 26, 2021) (citing *Bazemore*, 827 F.3d at 1333 (explaining that a "dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative"))).

Here, as discussed below I find that there are no genuine disputes as to any material facts, and no party has requested either an evidentiary hearing or a trial. *See* Doc. No. 12, at 22 ("[T]he Court should compel arbitration without holding a trial on the issue of whether an agreement to arbitrate was formed. . . . there is no genuine issue of material fact precluding the Court from deciding this 'contract formation' issue as a matter of law."); Doc. No. 16, at 9 ("Plaintiff respectfully submits that an evidentiary hearing or trial is not necessary because there is no genuine dispute of fact regarding Plaintiff's denial of the Arbitration Agreement."). The parties agree in large part on the material facts – the dispute lies with each party's interpretation of those facts.   As such, the undersigned has not conducted an evidentiary hearing, and does not recommend a trial.   *See, e.g.*, *Garcia v. J&J, Inc.*, No. 19-cv-60728-BLOOM/Valle, 2019 WL 5862967, at *5 (S.D. Fla. Nov. 8, 2019) (denying motion to compel arbitration without evidentiary hearing "[b]ecause the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution"); *Turner v. U-Haul Co. of Fla. 905, LLC*, No. 6:08-cv-118-Orl-28DAB, 2008 WL 709107 (M.D. Fla. Mar. 14, 2008) (denying motion to compel arbitration without evidentiary hearing based on undisputed facts contained in motion papers).

### III.   UNDISPUTED MATERIAL FACTS

   *A.   Defendant's Arbitration Agreement and Onboarding Procedures*

Defendant provides administrative support to private, post-secondary institutions that are owned and operated by Defendant's subsidiaries throughout the United States, including institutions located in Florida.   Declaration of Sherri McKaig, Doc. No. 12-1, ¶ 3 ("McKaig Dec.").   Defendant operates Florida Career College ("FCC"), which has ten campuses across the state, including an Orlando, Florida campus.   *Id.*; Declaration of Barbara Perez, Doc. No. 12-2, ¶ 3 ("Perez Dec.").   Defendant utilizes an online platform called "paycomonline.net," which allows job applicants to review job openings and apply for a position.   McKaig Dec., ¶ 8; Perez Dec., ¶ 7.   Once an applicant fills out an application, the application is forwarded to the manager who posted the position to review the application. McKaig Dec., ¶ 8; Perez Dec., ¶ 7.

Since at least 2013, Defendant has utilized an Alternative Dispute Resolution Program Arbitration Agreement ("Arbitration Agreement") for all employees. McKaig Dec., ¶ 10; Perez Dec., ¶ 5.   It is mandatory, no employee is exempt from it, and no employee is given the choice to "opt out" of the Arbitration Agreement. McKaig Dec., ¶¶ 10-11; Perez Dec., ¶ 6.   On the first day of each new hire's employment, Defendant requires the new employee to execute the Arbitration Agreement before the employee can proceed with the remaining onboarding

procedures and paperwork.   McKaig Dec., ¶ 10; Perez Dec., ¶¶ 5-6.   If an employee refuses to sign the Arbitration Agreement, the onboarding process stops, and the employee's offer of employment is revoked.   McKaig Dec., ¶ 10; Perez Dec., ¶ 6.   Defendant's local managers are trained on the standard operating procedures, including the mandatory nature of the Arbitration Agreement, that no employee can "opt out," and that if an employee states that he or she will not sign the Arbitration Agreement, the onboarding process comes to an immediate stop and the employee is not hired.   McKaig Dec., ¶ 12.

The Arbitration Agreement states that it is binding on both the employee and Defendant, and covers all employment related claims, including claims under the ADEA and comparable state age discrimination laws.   Doc. No. 12-3, at 2.   The Arbitration Agreement further states that arbitration shall be governed by and interpreted according to the FAA, and that arbitration shall be conducted under the then-effective Judicial Arbitration and Mediation Services (JAMS) Employment Arbitration Rules and Procedures.   *Id.*, at 3-4.   Among other things, the Arbitration Agreement also provides that it does not alter the at-will employment relationship between the parties, and reiterates that employment is at-will.   *Id.*, at 5.   The Arbitration Agreement also contains an integration clause:

> 10.   <u>Amendment</u>: This is the entire agreement between Employee and the Company regarding dispute resolution, and supersedes any and all prior agreements regarding these issues. Oral representations or agreements made before or after Employee's

employment do not alter this Agreement.   This Agreement may not be amended, modified, altered or supplemented other than in a writing signed by a duly authorized agent of the Company and by the Employee which specifically references this Agreement.

*Id.*, at 5.

The following language, in bold, is contained at the end of the Arbitration Agreement:

**NOTICE TO EMPLOYEE:   BY *SIGNING* THIS AGREEMENT, YOU AND THE COMPANY ARE AGREEING TO HAVE ANY AND ALL CLAIMS THAT ARISE OUT OF YOUR EMPLOYMENT DECIDED BY NEUTRAL ARBITRATION INSTEAD OF A JURY OR COURT TRIAL.   THIS ARBITRATION AGREEMENT AFFECTS YOUR LEGAL RIGHTS, YOU MAY WANT TO SEEK LEGAL ADVICE BEFORE *SIGNING.***

*Id.* (emphasis supplied).

Immediately before the signature blocks, the Arbitration Agreement states: "Employee and Company have executed this Agreement as of the date signed by Employee below.   By *signing* here, Employee acknowledges that Employee has read, understood, and agrees to be legally bound to the terms of this Agreement." *Id.*, at 6 (emphasis supplied).

B.   *Plaintiff's Application and Hiring Process*

On or about August 27, 2018, Plaintiff completed an online application for the position of "Student Finance Advisor (ORL) – 287278" with Defendant for the FCC Orlando campus.   Declaration of Natalie Ragland, Doc. No. 16-1, ¶ 4 ("Ragland

Dec."); Doc. 16-1, at 8-11 ("Ex. A").[2]   At the bottom of the application, there is the following paragraph:

> If an offer of employment is extended, in consideration for accepting employment, by signing below, I confirm my voluntary agreement to submit to final and binding arbitration for any and all claims and disputes with IEC, including but not limited to those related in any way to my employment or the termination of my employment . . . . I understand further that final and binding arbitration will be the sole and exclusive remedy for any such claim and dispute against both IEC and/or its employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve such claims or disputes, both IEC and I agree to forego any right we each may have had to a jury trial on these claims or disputes.

Ex. A, at 10.   Immediately below this paragraph is a section entitled "Acknowledged," to which Plaintiff answered "yes" and immediately below that is Plaintiff's electronic signature.[3]   *Id.* at 10–11.   Although Plaintiff states that this application is a "true and accurate copy of my completed Application for Student Finance Advisor (ORL)," Plaintiff somewhat confusingly avers in her Declaration

---

[2] The online application contains two electronic signatures for Plaintiff, one dated August 16, 2018, and one dated August 27, 2018.   Doc. No. 16-1, Ex. A.   While Plaintiff appears to argue that she only applied for the position on August 27, 2018, and Defendant appears to argue that Plaintiff applied for the same position on both dates, I find this dispute immaterial to resolution of the present motion, as the parties ultimately agree that Plaintiff did, in fact, apply for the Student Finance Advisor position in August 2018.   *See* McKaig Dec., ¶¶ 14-15 ; Perez Dec., ¶¶ 9-10; Ragland Dec., ¶ 4.   Thus, taking the facts in the light most favorable to Plaintiff, I will utilize the August 27, 2018 date for the remainder of this report.

[3] "Florida law recognizes an electronic signature like it does a written signature." *Bannister v. Sally Beauty Supply, LLC*, No. 3:19-cv-143-J-20JRK, 2020 WL 8223534, at *2 (M.D. Fla. Dec. 15, 2020) (discussing Fla. Stat. § 668.50(7)).   Here, Plaintiff does not dispute the validity of her signature merely because it is in electronic form.

that she "[does] not recall being provided with notice of the proviso incorporated into the printed version of the Application or any other application with Defendant." Ragland Dec., ¶¶ 4, 12. Plaintiff further admits that the application that she attaches to her Declaration is the same application Defendant has submitted in support of its motion to compel arbitration, which includes the paragraph concerning binding arbitration. *Id.*, ¶ 4.

Plaintiff contends that she was not selected for the Student Finance Advisor position that she applied for online. *Id.*, ¶ 5. Rather, Plaintiff avers that Defendant maintains more than one Student Finance Advisor position at the same time, and on or about February 27, 2019, Plaintiff received an offer letter from Defendant for a different Student Finance Advisor position. *Id.*, ¶¶ 13-14. Plaintiff avers that she did not apply for this different Student Finance Advisor position, and that the offer letter was not in response to her August 27, 2018 online application. *Id.*, ¶ 14.

The February 27, 2019 offer letter is for the position of Student Finance Advisor with FCC, Orlando Campus. Doc. No. 12-5. The offer letter clearly states that the offer of employment is contingent upon "[y]our agreement to the terms of the Company's Alternative Dispute Resolution Agreement (enclosed) and returning the *signed Agreement* along with a signed copy of this offer letter. . .," and "completion and signing of the Company's Employment Application online." *Id.*,

at 3 (emphasis supplied).   The offer letter further states that it "does not constitute an implied or expressed contract for employment," and that Plaintiff's employment would be at will.   *Id.*   Plaintiff signed the offer letter, directly under an acknowledgement statement "I accept the conditions of the offer as outlined above."   *Id.*, at 4.   *See also* Ragland Dec., ¶¶ 14-15, 17.

At the same time that she received the offer letter, Plaintiff also received a copy of the Arbitration Agreement.   Ragland Dec., ¶ 15.   Plaintiff avers that she contacted Barbara Perez, Defendant's Senior Compliance Officer at FCC, Orlando Campus, via telephone to ask what Plaintiff should do if she was not willing to enter into the Arbitration Agreement.   *Id.*, ¶ 16.   Plaintiff avers that Perez instructed Plaintiff to simply write down that she refused, and in compliance with those instructions, Plaintiff handwrote "No Refused" on the employee signature line of the Arbitration Agreement.   *Id.*   In sum, Plaintiff admits that she signed the offer letter, but denies signing the Arbitration Agreement beyond writing "No Refused." *Id.*, ¶¶ 17-18, 20.   However, Plaintiff printed her name directly below the signature line, and also printed her name at the top of the Arbitration Agreement.   Doc. No. 12-3, at 2, 6.   The only place that does not contain Plaintiff's name is the signature line where Plaintiff avers she wrote "No Refused."   *Id.*, at 6.

Plaintiff commenced her employment with Defendant on March 4, 2019. Perez Dec., ¶ 12.   Plaintiff's onboarding process was conducted with Perez.   *Id.*

While Perez avers that she instructed Plaintiff to review and execute the Arbitration Agreement as part of the onboarding process, she has no specific memory of Plaintiff's onboarding, and her Declaration is silent as to the telephone conversation described in Plaintiff's Declaration.   *Id.*, ¶¶ 12-13.   However, Perez avers that she is "certain that [Plaintiff's] onboarding was unremarkable in that she did not question the Arbitration Agreement or refuse to sign it."   *Id.*, ¶ 13.   Perez did not "closely scrutinize Plaintiffs' signature," but thought it resembled "Na Ragland," or "something to that effect."   *Id.*, ¶ 14.   Perez also executed the Arbitration Agreement on behalf of Defendant.   *Id.*; Doc. No. 12-3, at 6.

Both parties agree that the copy of the Arbitration Agreement attached to Defendant's motion is a true and correct copy of the Arbitration Agreement at issue, the only dispute is whether Plaintiff signed it with her name or "No Refused."   On the last page of the Arbitration Agreement, under the provision stating that "Employee acknowledges that Employee has read, understood, and agrees to be legally bound to the terms of this Agreement," Plaintiff's name is clearly printed as "Natalie Ragland."   Doc. No. 12-3, at 6.   The first page of the Agreement also contains the printed name "Natalie Ragland," and Plaintiff nowhere claims that these printed names are not her handwriting.   Doc. No. 12-3, at 2; Ragland Dec.

C.      *Plaintiff's Employment with Defendant*

Plaintiff was employed by Defendant from March 4, 2019, until her termination on February 18, 2020.   Doc. No. 1, ¶¶ 13, 26.   Other than the phone conversation with Perez, and the "No Refused" language on the Arbitration Agreement, there is no evidence that Plaintiff ever raised the issue of the Arbitration Agreement or binding arbitration at any time during her employment.

At the time Defendant hired Plaintiff, she was over the age of forty (40).   Doc. No. 1, ¶ 12.   Plaintiff alleges that throughout her employment she was repeatedly subjected to disparaging age-based comments, made by her coworkers and supervisor, and that these comments were made in the presence of Defendant's Director of Financial Aid and Campus President.   *Id.*, ¶¶ 14, 15.   Plaintiff further alleges that in July 2019, she reported her concerns about these age-based comments up through her direct chain of command, and to Human Resources, but no action was taken.   *Id.*, ¶¶ 16-18.   Instead, starting in or about November of 2019, Plaintiff alleges that was she subject to various adverse employment actions, including placement on a Performance Improvement Plan, the reassignment of student files, and the denial of a request to transfer to another open position.   *Id.*, ¶¶ 20-22, 24. Plaintiff alleges she reported these actions to Human Resources on January 13, 2020, but again no action was taken.   *Id.*, ¶ 25.   And on February 18, 2020, Defendant

fired Plaintiff – which she alleges was pretextual and part of the harassment and retaliation she suffered. *Id.*, ¶ 26.

## IV.   VALIDITY OF THE ARBITRATION AGREEMENT

As previously noted, the only issue in dispute is whether a valid arbitration agreement exists.   On this point, it appears that the parties focus primarily on the element of acceptance. *See* Doc. No. 12, at 17-23; Doc. No. 16, at 8-13.   Defendant first argues that Plaintiff signed the Arbitration Agreement itself, thereby evidencing acceptance.   But, as the undisputed facts show – taken in the light most favorable to Plaintiff as the undersigned must at this stage – Plaintiff did not affix her signature on the Arbitration Agreement, but rather signed "No Refused."

Defendant provides no evidence to dispute this.   Perez, the person involved in Plaintiff's onboarding, has no specific recollection of Plaintiff's onboarding process, and admits that she did not "carefully scrutinize" Plaintiff's signature. Moreover, to the naked eye it is clear that the signature on the February 27, 2019 offer letter (a document which Defendant itself puts forth as proof of Plaintiff's acceptance of binding arbitration) differs in nearly all respects from what Defendant claims is Plaintiff's signature on the Arbitration Agreement. *Compare* Doc. No. 12-5, at 4 *with* Doc. No. 12-3, at 6.   Notably, Defendant has not submitted any evidence or testimony from a handwriting expert to establish that Plaintiff actually signed the Arbitration Agreement.

On the other hand, Plaintiff avers in her Declaration that she did not sign the Arbitration Agreement, but rather wrote the phrase "No Refused," and the undersigned's own review of the Arbitration Agreement clearly shows that the phrase "No Refused" is indeed written on the signature line.   *See* Ragland Dec., ¶¶ 16-17.   So, taking the undisputed facts in the light most favorable to Plaintiff, the undersigned first finds the Arbitration Agreement itself was not signed by Plaintiff, but rather contains the phrase "No Refused."[4]   *See, e.g.*, *Schoendorf*, 2009 WL 1075991, at *7 (finding that defendant did not meet its burden of establishing that plaintiff agreed to an arbitration agreement because it did not prove that "scribble" on arbitration agreement was plaintiff's signature, and noting the lack of testimony from a handwriting expert); *Shearson, Lehman, Hutton, Inc. v. Lifshutz*, 595 So. 2d 996, 997 (Fla. 4th Dist. Ct. App. 1992) (affirming denial of a motion to compel arbitration where employees denied signing or agreeing to the arbitration agreement, and employer did not produce any handwriting expert or make any attempt to authenticate the "illegible scratches" on the signature lines of the agreement).

---

[4] The undersigned is aware of the very unusual circumstances here.   Plaintiff printed her name at the top of the Arbitration Agreement.   She printed her name at the bottom of the Arbitration Agreement.   The only place where she did not affix her name is on the signature line.   However, Defendant has cited to no legal authority establishing that such a writing would constitute a valid and enforceable contract under either Florida law or the general federal law favoring arbitration, particularly when the words Plaintiff did affix are "No Refused."   Given that it is Defendant's burden to establish the existence of a binding arbitration agreement, the undersigned cannot say that what Plaintiff did – no matter how suspect – resulted in a fully executed agreement.

Defendant next turns to the August 27, 2018 employment application and the February 27, 2019 offer letter as proof that Plaintiff expressly accepted the Arbitration Agreement.[5]   This argument fails for several reasons.   First, the Arbitration Agreement contains an integration clause, which expressly states that the Arbitration Agreement "supersedes any and all prior agreements" regarding arbitration and that any agreements made before or after employment "do not alter" the Arbitration Agreement.   Doc. No. 12-3, at 5.   Relatedly, the Arbitration Agreement expressly states that the only manner of acceptance is "BY SIGNING THIS AGREEMENT."   *Id.* (emphasis in original).   Defendant cites no legal authority suggesting how the Court can ignore these terms and instead deem the August 27, 2018 employment application and/or the February 27, 2019 offer letter proof of Plaintiff's acceptance of the Arbitration Agreement.   *See Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124, 126 (Fla. 3d Dist. Ct. App. 1976) ("The well established rule of law is that a contract may be discharged or extinguished by merger into a

---

[5] It is important to note that Defendant is not arguing that either the August 27, 2018 employment application or the February 27, 2019 offer letter themselves (together or separately) constitute a binding arbitration agreement.   Defendant solely points to the Arbitration Agreement as *the* agreement that it seeks to enforce.   Rather, Defendant relies on these other documents in an attempt to demonstrate Plaintiff's assent and/or acceptance of the Arbitration Agreement itself.   Further, Defendant provides no legal authority establishing or even suggesting that when an employee notes her acceptance of conditional and/or contingent terms set forth in a prior employment application and/or offer letter, such acceptance trumps a later, clear, written rejection of a stand-alone Arbitration Agreement, the execution of which Defendant repeatedly asserts is a mandatory condition of employment.

later contract entered into between the parties in respect to the same subject which replaces the original contract.").

Second, the clear terms of the employment application and offer letter contradict Defendant's position.   The employment application expressly states that it "does not constitute an employment contract," and the provision concerning arbitration is conditional: "[i]f an offer of employment is extended."   Doc. No. 12-4, at 3; Ex. A, at 10.   Defendant cites to no legal authority establishing that such language would constitute – under Florida law – acceptance of an arbitration agreement.   And the language of the offer letter is even worse for Defendant.   The offer letter states that the offer of employment is contingent upon Plaintiff's "agreement to the terms of the Company's Alternative Dispute Resolution Agreement (enclosed) and returning the *signed Agreement* along with a signed copy of this offer letter. . . ."   Doc. No. 12-5, at 3 (emphasis supplied).   Thus, by its very terms, the offer letter makes clear that Plaintiff must sign the Arbitration Agreement, or any offer of employment will be revoked.   The offer letter itself does not constitute an acceptance of binding arbitration.[6]

---

[6] While Defendant submits a copy of the offer letter, Defendant does not submit a copy of the Alternative Dispute Resolution Agreement that was attached to the offer letter. The only Arbitration Agreement submitted is the version that includes Plaintiff's "No Refused" verbiage.   And while there appears to be a discrepancy over when Plaintiff wrote on the Arbitration Agreement, *see* Perez Dec., ¶ 12 and Ragland Dec., ¶ 17, Defendant nowhere argues that the version Plaintiff wrote on is different from the version attached to the offer letter.

Thus, in the absence of any authority to the contrary, the undersigned cannot find that the August 27, 2018 employment application and February 27, 2019 offer letter establish that Plaintiff agreed to be bound by the Arbitration Agreement. The last writing – the Arbitration Agreement where Plaintiff wrote "No Refused" – controls.   And given Plaintiff's clear rejection of the Arbitration Agreement, the undersigned cannot recommend that the Court grant Defendant's motion to compel arbitration.   *See Turner*, 2008 WL 709107, at *5 (denying motion to compel arbitration where plaintiff did not sign arbitration agreement, but plainly rejected the agreement by emailing that he would not be able to sign it).

Defendant alternatively argues that Plaintiff did not have to sign the Arbitration Agreement in order for it to be enforceable; rather the agreement to arbitrate need only be reflected in writing to satisfy the FAA's "written agreement" requirement.   Doc. No. 12, at 19.   Defendant puts the cart before the horse.   At this stage, the undersigned is assessing whether a valid agreement exists pursuant to Florida contract law.   *See Schoendorf*, 2009 WL 1075991, at *9 (noting that the question of whether an agreement is enforceable under state law is "a separate issue" from whether the FAA requires the parties to sign an arbitration agreement for it to be enforceable).   And "[i]n Florida, it is well-settled that the offeror may specify the terms and manner of acceptance."   *Mattson v. WTS International, Inc.*, Case No. 8:20-cv-1245-CEH-AEP, 2021 WL 1060211, at *7 (M.D. Fla. Mar. 20, 2021)

(quoting *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *9 (M.D. Fla. July 20, 2011)).   Here, the Arbitration Agreement clearly states that the employee accepts the Agreement by signature only.   Doc. No. 12-3, at 5-6.   The offer letter conditioned employment on Plaintiff signing the Arbitration Agreement.  Doc. No. 12-5, at 3.   And the Declarations from Defendant further establish that an employee must *sign and execute* the Arbitration Agreement in order to be hired and work for Defendant.   McKaig Dec., ¶¶ 10, 12; Perez Dec., ¶¶ 5-6.   Thus, because Plaintiff did not sign the Arbitration Agreement, but instead wrote "No Refused," there was no acceptance, and no valid arbitration agreement under Florida law. *See Turner*, 2008 WL 709107, at *4-5 (finding a plain rejection of arbitration agreement evidenced a lack of acceptance); *Schoendorf*, 2009 WL 1075991, at *10-11 (finding no agreement to arbitrate where employer required arbitration agreement to be signed and employer failed to prove that employee actually signed the agreement).   *See also Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 920 (Fla. 4th Dist. Ct. App. 2004) ("[N]o party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.").[7]

---

[7] The fact that Defendant's standard policy is to have all employees execute the Arbitration Agreement prior to commencing employment is not enough to establish acceptance in this case, particularly when faced with undisputed evidence that Plaintiff rejected the Arbitration Agreement.   *See Schoendorf*, 2009 WL 1075991, at *10 (finding defendant's "habit and practice" evidence was insufficient to defeat plaintiff's direct denials that she never signed the arbitration agreement); *Odom*, 278 So. 3d at 354-55 (finding affidavit that only discussed employer's general and ordinary practices regarding

The lone decision cited by Defendant on this point is readily distinguishable. In *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), the arbitration policy "clearly announced" that "acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance," that "no signature would be required for the policy to be applicable," and "the policy would be a condition of continued employment." 428 F.3d at 1374-75. Here, however, no such language exists – the sole method by which an employee agrees to arbitration is by signing the Arbitration Agreement. Doc. No. 12-3, at 5. *See also* Doc. No. 12-5 (February 27, 2019 offer letter stating that employment is contingent on returning the "signed" Arbitration Agreement); McKaig Dec., ¶¶ 10-12 (declaring that every new employee at onboarding must "execute" the Arbitration Agreement, and if the employee "refuses to sign the Agreement" the employee's offer of employment is revoked); Perez Dec., ¶ 6 (declaring that every new employee is required to "execute the Arbitration Agreement" before completing onboarding, and that if an employee "were to refuse to sign the Arbitration Agreement," the onboarding process would cease). Because Plaintiff did not accept the Arbitration Agreement by the exclusive means and manner directed by Defendant, there is no acceptance

---

hiring and executing arbitration agreements and did not contain personal knowledge of the hiring and employment practice that this specific plaintiff underwent did not constitute "competent evidence" that plaintiff entered into the arbitration agreement).

and no binding arbitration agreement.   "Even though there is a strong policy favoring arbitration, arbitration is a contractual right and a party cannot be required to submit to arbitration unless he has agreed to submit the dispute to arbitration." *Zamora v. E. Coast Right of Way Maint., Inc.*, No. 2:08-cv-539-FtM-29DNF, 2008 WL 4716909, at *4 (M.D. Fla. Oct. 23, 2008) (citing *World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008)).

For the same reasons, Defendant's final argument is also unpersuasive. Defendant contends that even if Plaintiff did not sign the Arbitration Agreement, she can be deemed to have agreed to binding arbitration by virtue of her continued employment.   However, as the cases cited by Defendant readily demonstrate – this legal theory only applies where the employer made clear to its employees that continued employment constitutes acceptance.[8]   And here – as noted above – the

---

[8] *See Herboso v. Pollo Operations, Inc.*, No. 18-21960-CIV-MARTINEZ/AOR, 2018 WL 6978697, at *1 (S.D. Fla. Nov. 27, 2018), *report and recommendation adopted*, 2018 WL 6980934 (S.D. Fla. Dec. 17, 2018) (company memorandum regarding mandatory arbitration program specifically stated that by reporting to work after a date certain, the employee agreed to the terms of the mandatory arbitration program as a condition of continued employment); *Corbin v. Affiliated Computer Servs., Inc.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, at *1 (M.D. Fla. July 19, 2013) (revised version of employer's dispute resolution plan circulated via email specifically stated that by continuing employment, the employee accepted and consented to being bound by the dispute resolution plan); *Mays v. Keiser Sch., Inc.*, No. 10-61921-CIV, 2011 WL 1539675, at *2 (S.D. Fla. Mar. 31, 2011), *report and recommendation adopted*, 2011 WL 1496774 (S.D. Fla. Apr. 19, 2011) (agreement at issue stated that arbitration was a condition of continued employment, and employee signed and initialed the agreement); *Sierra v. Isdell*, No. 6:09-cv-124-Orl-19KRS, 2009 WL 2179127, at *1, 4 (M.D. Fla. July 21, 2009) (arbitration agreement did not require employer/employee signatures, and stated that assent to enter into the arbitration agreement was manifested

exact opposite is the case.   The *only* manner in which Defendant authorizes acceptance is via *signing* the Arbitration Agreement, which the undisputed facts demonstrate that Plaintiff did not do.   Stated differently, "Plaintiff accepted employment with Defendant but did not manifest acceptance of the [A]rbitration [A]greement, and the agreement did not provide for acceptance through continued employment."   *Schoendorf*, 2009 WL 1075991, at *10.

In sum, while Plaintiff admits to receiving a copy of the Arbitration Agreement, and to writing on it, the undisputed facts show that she did not sign it, but rather wrote "No Refused."   And the only manner in which an employee can accept the Arbitration Agreement is by signing it.   In the absence of any evidence

---

by the employee's decision to continue employment after the effective date).

Defendant also cites to *Robson v. D.R. Horton, Inc.*, No. 6:21-cv-719-GAP-LRH, 2021 WL 3914474, at *10 n.15 (M.D. Fla. Aug. 12, 2021), *report and recommendation adopted*, 2021 WL 3912239 (M.D. Fla. Sept. 1, 2021).   However, to the extent that the defendant's argument that continued employment constituted acceptance was not abandoned in that case, much like here, the defendant pointed to no facts in that case demonstrating that the plaintiff's continued employment would constitute acceptance of the arbitration agreement.   So, *Robson* does not support Defendant's position.

Finally, in a footnote, Defendant cites three more cases which are readily distinguishable.   *Ellerbee v. GameStop, Inc.*, 604 F. Supp. 2d 349, 352, 354 (D. Mass. 2009), applied Massachusetts contract law, and the agreement at issue specifically stated that continued employment constituted agreement to the arbitration policies.   *McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *1 (S.D. Fla. Feb. 24, 2017) did not concern the issue of continued employment, and the arbitration policy at issue specifically stated that continued use of services constituted acceptance.   And *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. 4th Dist. Ct. App. 2007), did not resolve solely on the issue of continued employment, as in that case, given that the lawsuit was brought to seek benefits under a contract which contained the arbitration clause at issue, the plaintiff was estopped from denying the validity of the agreement.

to the contrary, this shows a clear intent to reject the Arbitration Agreement – the only contract that Defendant seeks to enforce here.   And without acceptance, there is no valid contract under Florida law, and without a valid contract, the undersigned cannot recommend that Plaintiff be compelled to participate in binding arbitration.  *See Schoendorf*, 2009 WL 1075991, at *10–11 (denying motion to compel arbitration where there was only circumstantial evidence to suggest that plaintiff signed the arbitration agreement, no evidence that anyone witnessed plaintiff sign the agreement, and plaintiff directly denied signing the agreement).[9]

## V.    RECOMMENDATION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion to Compel Arbitration and Stay Case (Doc. No. 12) be **DENIED**.   The undersigned further recommends that the Court lift the stay of the case and direct the parties to file a Case Management Report as required by Local Rule 3.02 within a time established by the Court.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's

---

[9] Because the undersigned is recommending that the motion to compel arbitration be denied for lack of acceptance and the formation of a binding arbitration agreement between the parties, the undersigned has not address Plaintiff's other arguments concerning whether her job application relates to the position for which she was hired, or Defendant's other arguments concerning arbitrability or waiver.

factual findings and legal conclusions.   Failure to serve written objections waives

that party's right to challenge on appeal any unobjected-to factual finding or legal

conclusion the district judge adopts from the Report and Recommendation.   11th

Cir. R. 3-1.

Recommended in Orlando, Florida on February 21, 2023.


LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy