# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 30, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-12389-AA
Case Style: Natalie Ragland v. IEC US Holdings, Inc.
District Court Docket No: 6:22-cv-00995-WWB-LHP

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12389

Non-Argument Calendar

_____

NATALIE RAGLAND,

                                                           Plaintiff-Appellee,

*versus*

IEC US HOLDINGS, INC.,
d.b.a. Florida Career College,

                                                           Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-00995-WWB-LHP

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 4 of 13 PageID 215
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 2 of 11

2                       Opinion of the Court                  23-12389

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

IEC US Holdings, Inc., a corporation doing business as Florida Career College, appeals the denial of its motion to compel Natalie Ragland to arbitrate her complaint alleging that IEC discriminated and retaliated against her based on her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01. The district court ruled that IEC failed to prove that the parties entered into a valid arbitration agreement. We affirm.

After Ragland filed her complaint, IEC moved to compel arbitration. IEC argued that Ragland knew that agreeing to its Alternative Dispute Resolution Program Arbitration Agreement was a condition of employment because her employment application and offer letter both referenced the arbitration requirement. IEC argued that the arbitration requirement also was "expressly contained in the stand-alone Arbitration Agreement that Ragland received and 'executed' on her first day of employment." Although Ragland's counsel told IEC that she never "signed" the agreement, but instead wrote, "No Refused," on the signature line, IEC asserted that the agreement was enforceable because she assented to arbitration by signing the employment application and offer letter

23-12389               Opinion of the Court                3

and by commencing employment with knowledge of the requirement.

IEC attached copies of Ragland's employment application, which was electronically signed and submitted on August 16 and 27, 2018, and stated above the acknowledgment section:

> If an offer of employment is extended, in consideration for accepting employment, by signing below, I confirm my voluntary agreement to submit to final and binding arbitration for any and all claims and disputes with IEC, including but not limited to those related in any way to my employment or the termination of my employment . . . I understand further that final and binding arbitration will be the sole and exclusive remedy for any such claim and dispute against both IEC and/or its employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve such claims or disputes, both IEC and I agree to forego any right we each may have had to a jury trial on these claims or disputes.

The statement further provided "that the application does not constitute an employment contract."

IEC attached a copy of the written offer letter, which it alleged Ragland received and signed on February 27, 2019. The offer letter specified: "This offer of employment is contingent upon the following: . . . Your agreement to the terms of the Company's Alternative Dispute Resolution Agreement (enclosed) and returning

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 6 of 13 PageID 217
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 4 of 11

4                        Opinion of the Court                    23-12389

the signed Agreement along with a signed copy of this offer letter . . . ." Ragland signed the letter:

*[signature]*
NATALIE RAGLAND
, 02/27/2019

A week later, Ragland reported for onboarding. According to Barbara Perez, the business office manager responsible for onboarding new employees, every new hire was required to execute the arbitration agreement before proceeding with other onboarding procedures. Perez attested that no employee had ever refused to sign the arbitration agreement, nor had any employee ever questioned whether the agreement was mandatory for employment. Although Perez could not recall all the details of Ragland's onboarding, Perez was "certain that her onboarding was unremarkable in that she did not question the Arbitration Agreement or refuse to sign it" because Perez "would have certainly remembered it." Perez stated that after Ragland "signed" the arbitration agreement, Perez executed it on IEC's behalf and did not scrutinize Ragland's signature because she was "not a handwriting expert and her signature appeared to resemble 'Na Ragland' or something to that effect."

IEC attached a copy of the allegedly-signed arbitration agreement. Paragraphs two and three stated that the agreement was binding on the employee and IEC and covered all claims

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 7 of 13 PageID 218
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 5 of 11

23-12389                Opinion of the Court                5

related to employment, including claims under the Age Discrimination in Employment Act and applicable state law. Paragraph ten contained an integration clause:

> <u>Amendment</u>: This is the entire agreement between Employee and the Company regarding dispute resolution, and supersedes any and all prior agreements regarding these issues. Oral representations or agreements made before or after Employee's employment do not alter this agreement. This Agreement may not be amended, modified, altered or supplemented other than in a writing signed by a duly authorized agent of the Company and by the Employee which specifically references this Agreement.

Above the signature line on the final page, the agreement stated in all capital letters and bold font: "**BY SIGNING THIS AGREEMENT, YOU AND THE COMPANY ARE AGREEING TO HAVE ANY AND ALL CLAIMS THAT ARISE OUT OF YOUR EMPLOYMENT DECIDED BY NEUTRAL ARBITRATION INSTEAD OF A JURY OR COURT TRIAL. THIS ARBITRATION AGREEMENT AFFECTS YOUR LEGAL RIGHTS.**" It further stated: *"By signing here*, Employee acknowledges that Employee has read, understood, and agrees to be legally bound to the terms of this Agreement." (emphasis added) Ragland wrote the date and printed her name on the "Name (Printed)" line, but she wrote, "No Refused," on the "Employee Signature" line:

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 8 of 13 PageID 219
USCA11 Case: 23-12389    Document: 32-1    Date Filed: 01/30/2024    Page: 6 of 11

6                       Opinion of the Court                    23-12389

*to the terms of this Agreement.*

*NoRefused*
_____
Employee Signature

Below Ragland's signature block, Perez printed her name and title.

Ragland opposed the motion to compel arbitration and argued that IEC failed to produce a valid agreement to arbitrate. Ragland submitted a declaration and attested that after receiving the offer letter and copy of the arbitration agreement, she called Perez and asked what she should do if she was unwilling to accept the arbitration agreement. Ragland stated that Perez instructed her "to simply put down that I refused," so she wrote the words "No Refused" and returned the signed offer letter and the rejected arbitration agreement.

The magistrate judge issued a report and recommendation that the motion to compel arbitration be denied. The magistrate judge determined that an evidentiary hearing or trial was unnecessary because the material facts were undisputed. The magistrate judge identified the only dispute as whether Ragland signed her name on the arbitration agreement or instead wrote, "No Refused." The magistrate judge found that "to the naked eye, it is clear that the signature on the February 27, 2019 offer letter . . . differs in nearly all respects from what [IEC] claims is [Ragland's] signature on the Arbitration Agreement." The magistrate judge found that the arbitration agreement "clearly shows that the phrase 'No Refused' is indeed written on the signature line." The magistrate

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 9 of 13 PageID 220
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 7 of 11

23-12389                Opinion of the Court                7

judge noted the "very unusual circumstances" of Ragland's rejection but concluded that IEC failed to carry its burden to prove the existence of a valid agreement, including by failing to argue or proffer evidence from a handwriting expert that Ragland had signed her name on the agreement. Further, the magistrate judge concluded that both the integration clause in the arbitration agreement and the express requirement that the agreement be accepted "BY SIGNING THIS AGREEMENT" meant that neither the employment application nor the offer letter could substitute for her signature on the agreement, and her continued employment could not constitute acceptance under the terms of the agreement. IEC objected to the report and recommendation.

The district court overruled the objections and denied the motion to compel arbitration because IEC failed to prove that a valid arbitration agreement existed. The district court explained that although a factual dispute existed regarding whether Perez told Ragland that she could refuse the arbitration agreement, that dispute was immaterial to whether Ragland in fact signed the agreement. As for IEC's contention that Perez believed Ragland had signed the agreement using words resembling "Na Ragland," the district court stated that although it did "not condone [Ragland's] apparent deception," it agreed with the magistrate judge that the signature line clearly stated, "No Refused," and did not resemble Ragland's signature on the offer letter. The district court rejected IEC's argument that the employment application, offer letter, and commencement of employment could constitute acceptance in the light of the controlling last writing, which

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 10 of 13 PageID 221
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 8 of 11

8                          Opinion of the Court                    23-12389

evidenced a clear, written refusal to arbitrate and nullified any previous acts of assent.

We review *de novo* the denial of a motion to compel arbitration. *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1021 (11th Cir. 2018). Under the Federal Arbitration Act, when a party moves to compel arbitration, the district court determines whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. "If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it may conclude as a matter of law that the parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quotation marks omitted, alteration adopted).

The district court correctly denied the motion to compel Ragland to arbitrate. IEC cannot force Ragland to arbitrate after she not only declined to sign the agreement but expressly "[r]efused" the final written agreement. Although "no signature is needed to satisfy the [Act's] written agreement requirement," state law governs "whether an enforceable contract or agreement to arbitrate exists" in the first place. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368–69 (11th Cir. 2005). Florida law, which the parties agree governs, requires the party seeking enforcement to prove that an agreement exists—including offer, acceptance, consideration, and sufficient specification of essential terms. *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. Dist. Ct. App. 2019). An "objective test is

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 11 of 13 PageID 222
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 9 of 11

23-12389                Opinion of the Court                9

used to determine whether a contract is enforceable." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) ("The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs . . . .").

IEC argues that the district court should have held a hearing or bench trial to resolve contested facts and credibility issues regarding whether Perez told Ragland that she could refuse the arbitration agreement. But we disagree. The alleged verbal exchange between Ragland and Perez is immaterial to whether Ragland signed the arbitration agreement as required by its terms. Under both accounts, the undisputed material fact remains that Ragland did not inscribe her signature on the agreement. *See Kendel v. Pontious*, 261 So. 2d 167, 169–70 (Fla. 1972) (restating the familiar rule that "acceptance shall be made in the manner, at the place, and within the time expressly or impliedly designated in the offer"); *Signature*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "signature" as a "person's name or mark written by that person or at the person's direction; esp., one's handwritten name as one ordinarily writes it . . . .").

Although IEC contends that the district court erred in finding that it was "undisputed" that the words on the signature line said, "No Refused," IEC never denied that the words said, "No Refused," nor did IEC argue that the words were in fact Ragland's signature. Instead, IEC argued that Ragland wrote "what *appeared* to be her name" and that Perez "*believed* that Ragland had signed it 'Na Ragland.'" Under an objective test, Perez's belief is immaterial

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 12 of 13 PageID 223
USCA11 Case: 23-12389    Document: 32-1    Date Filed: 01/30/2024    Page: 10 of 11

10                     Opinion of the Court                  23-12389

where the writing clearly and undisputedly states, "No Refused." *See Robbie*, 469 So. 2d at 1385. Insofar as IEC contends that Perez's testimony that she "never had an employee refuse to sign" the agreement materially conflicted with Ragland's allegation that she rejected the agreement, we disagree because regardless of what Ragland said or did not say to Perez, Ragland still did not sign the agreement. *See id.*

The district court also correctly rejected IEC's argument that Ragland agreed to arbitration by electronically signing the employment application and signing the offer letter. Although both documents referenced the arbitration requirement and the offer letter included a copy of the arbitration agreement, the terms of the arbitration agreement specified that "[t]his is the entire agreement between Employee and the Company regarding dispute resolution, and supersedes any and all prior agreements regarding these issues." Moreover, the employment application expressly disclaimed constituting a contract, and the offer letter specified that not only must Ragland agree to the terms of the enclosed arbitration agreement, but she must "return[] the *signed Agreement* along with a signed copy of this offer letter." The terms of the offer letter did not provide Ragland the option to accept the arbitration agreement only by signing the offer letter; both the signed offer letter *and* the signed arbitration agreement were necessary under the terms of IEC's offer. Because Ragland did not sign the arbitration agreement, IEC failed to prove that Ragland manifested valid acceptance of the arbitration agreement.

Case 6:22-cv-00995-WWB-LHP   Document 30   Filed 01/30/24   Page 13 of 13 PageID 224
USCA11 Case: 23-12389   Document: 32-1   Date Filed: 01/30/2024   Page: 11 of 11

23-12389                Opinion of the Court                11

Insofar as IEC argues that Ragland's commencement and continuance of employment with IEC with knowledge of the arbitration requirement constitutes acceptance, we again disagree. Continuation of employment constitutes acceptance of an agreement to arbitrate when the terms of the agreement specify that continuing employment is a valid method of acceptance. *See e.g., Caley*, 428 F.3d at 1374–75 (explaining that the arbitration policy "clearly announced" that "acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance" of the policy and that "no signature would be required for the policy to be applicable"); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 659–61 (Fla. Dist. Ct. App. 2008) (explaining that although the employee did not sign the arbitration policy, the policy expressly provided that continuation of employment would be deemed acceptance of the policy). In contrast, IEC's arbitration agreement expressly required acceptance by signing the agreement. *See Caley*, 428 F.3d at 1375; *Kendel*, 261 So. 2d at 169–70.

We **AFFIRM** the denial of the motion to compel arbitration.